1997 SD 95

**In the Matter of the Alleged Mental Illness of Rollin WOODRUFF**

**In the Matter of the Alleged Mental Illness of Michael WOODRASKA**

Nos. 19807, 19808.

Supreme Court of South Dakota.

Considered on Briefs March 24, 1997.

Decided July 23, 1997.

David M. Hosmer of Hosmer & Kettering, Yankton, for Appellants Woodruff and Woodraska.

Mark Barnett, Attorney General, Paul Cremer, Assistant Attorney General, Pierre, for Appellee Steven Lindquist.

AMUNDSON, Justice.

[¶ 1] Rollin Woodruff (Woodruff) and Michael Woodraska (Woodraska) appeal the circuit court's conclusion that their appeals are moot. We affirm.

## FACTS AND PROCEDURE

[¶ 2] Woodruff was involuntarily admitted to the Human Services Center (Center) on October 25, 1995, after he assaulted a nurse and a security guard at the Mitchell hospital. Shortly thereafter, a hearing was held before the Yankton County Board of Mental Illness (Board). During the hearing, Dr. Daryl Stephenson, a psychiatrist, stated that he believed Woodruff suffered from paranoid delusions, and his judgment and insight were impaired.

[¶ 3] Board determined by clear and convincing evidence that Woodruff met the criteria for involuntary commitment as set forth in SDCL 27A–1–2.[1] Subsequently, Board found that Woodruff had a severe mental illness as defined by SDCL 27A–1–1(17),[2] was a danger to others as defined by SDCL 27A–1–1(4),[3] and was in need of, and likely to benefit from, the treatment proposed. Board also determined that confinement at the Center was the least restrictive treatment available or appropriate at that time.

[¶ 4] Board ordered Woodruff be committed to the Center for ninety days beginning October 27, 1995. He filed his notice of appeal November 2, 1995. He was released from the Center on December 15, 1995.

[¶ 5] Woodraska was involuntarily committed to the Center on February 28, 1995. During his hearing, Dr. Stephenson diagnosed him with a bipolar disorder, manic type with psychotic features, and as having an abuse problem with marijuana and possibly alcohol. Dr. Stephenson further explained that Woodraska suffers from a "substantial organic or psychiatric disorder of thought, mood, perception, orientation or memory that significantly impairs his judgment, behavior and ability to cope with the basic demands of life."

[¶ 6] Board determined by clear and convincing evidence that Woodraska met the criteria for involuntary commitment as set forth in SDCL 27A–1–2. Board also found that Woodraska had a severe mental illness as defined by SDCL 27A–1–1(15), was a danger to others as defined by SDCL 27A–1–1(4), and was likely to benefit from the treatment proposed.

[¶ 7] Board committed Woodraska to the Center on February 7, 1995, for a period of ninety days. He filed his notice of appeal March 3, 1995. He was ultimately discharged on March 27, 1995.

[¶ 8] Woodruff and Woodraska appealed to the circuit court, which informed them of its intention to dismiss both appeals as moot since the parties had been released from the Center. However, the court afforded them the opportunity to submit briefs on the issue of mootness. In a consolidated brief, both parties argued their appeals were not moot. State did not submit a brief. The circuit court ultimately found both appeals to be moot, and entered findings of fact and conclusions of law. Woodruff and Woodraska appeal this decision, claiming the appeals are not moot for various reasons.

## STANDARD OF REVIEW

[¶ 9] We review the circuit court's findings by applying a clearly erroneous standard. *City of Colton v. Schwebach*, 1997

1.  SDCL 27A–1–2 provides:
    A person is subject to involuntary commitment if:
    (1) The person has a severe mental illness:
    (2) Due to the severe mental illness, the person is a danger to self or others; and
    (3) The individual needs and is likely to benefit from treatment.

2.  SDCL 27A–1–1(17) states:
    "Severe mental illness," substantial organic or psychiatric disorder of thought, mood, perception, orientation or memory which significantly impairs judgment, behavior or ability to cope with the basic demands of life. Mental retardation, epilepsy, other developmental disability, alcohol or substance abuse, or brief periods of intoxication, or criminal behavior do not, alone, constitute severe mental illness.

3.  SDCL 27A–1–1(4) states:
    "Danger to others," behavior due to severe mental illness which supports a reasonable expectation that the person will inflict serious physical injury upon another person in the very near future. Such behavior shall be evidenced by recent acts which constitute a danger of serious physical injury for another individual. Such acts may include a recently expressed threat if the threat is such that, if considered in the light of its context or in light of the person's recent previous acts, it is substantially supportive of an expectation that the threat will be carried out; ...

SD 4, ¶ 8, 557 N.W.2d 769, 771. Legal conclusions, on the other hand, are reviewed de novo. *Id.*

## DECISION

■ [¶ 10] It is well recognized that this Court renders opinions pertaining to actual controversies affecting people's rights. *Rapid City Journal v. Circuit Ct.,* 283 N.W.2d 563, 565 (S.D.1979) (citing *Clarke v. Beadle County,* 40 S.D. 597, 169 N.W. 23 (1918)). "Accordingly, an appeal will be dismissed as moot where, before the appellate decision, there has been a change of circumstances or the occurrence of an event by which the actual controversy ceases and it becomes impossible for the appellate court to grant effectual relief." *Id.* (citing *Campbell v. Fritzsche,* 78 S.D. 593, 105 N.W.2d 675 (1960); *Dodds v. Bickle,* 77 S.D. 54, 85 N.W.2d 284 (1957); *State v. City of Veblen,* 56 S.D. 394, 228 N.W. 802 (1930)); *see also State v. Shape,* 517 N.W.2d 650, 656 (S.D.1994); *Aetna Life Ins. Co. v. Satterlee,* 475 N.W.2d 569, 572 (S.D.1991). A common example of this is when a prisoner has been released from custody, in which case this Court "should not hear any appeal on the assumption that the defendant will commit another crime and be imprisoned again, nor should it set the stage for easier parole for him if he does commit another crime." *Moeller v. Solem,* 363 N.W.2d 412, 413–14 (S.D.1985).

■ [¶ 11] However, there are exceptions to mootness which will allow a full determination of the case. One is when there are collateral consequences affecting the rights of a party. *Hanson v. Bean,* 364 N.W.2d 141, 142–43 (S.D.1985) (citing *Sibron v. New York,* 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968)). In *Sibron,* the United States Supreme Court stated that a "case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." 392 U.S. at 57, 88 S.Ct. at 1900, 20 L.Ed.2d at 931–32. The other exception is when "jurisdiction will lie even though the order attacked has expired 'if the underlying dispute between the parties is one "capable of repetition, yet evading review." ' " *Rapid City Journal,* 283 N.W.2d at 565–66 (citing *Nebraska Press Ass'n v. Stuart,* 427 U.S. 539, 546, 96 S.Ct. 2791, 2797, 49 L.Ed.2d 683, 690 (1976)).

## Collateral Consequences

■ [¶ 12] Woodruff and Woodraska first contend their issues are not moot because there are collateral consequences to involuntary commitment that affect their rights. Such legal consequences in the context of mentally incompetent cases have been described as restrictions on voting rights, restrictions on the right to serve on a federal jury, restrictions on the ability to obtain a license to drive, limitations on gun permit access, a rebuttable presumption of continued incompetency, the right to dispose of property, and the right to execute contracts. *In re Ballay,* 482 F.2d 648, 651–52 (D.C.Cir. 1973) (footnotes omitted). However, many of the legal consequences discussed in *Ballay* clearly do not exist in this case due to SDCL 27A–12–1.2, which states:

> Notwithstanding any other provision of law, no person may be deemed incompetent to manage his affairs, to contract, to hold professional, occupational or other licenses, to marry and obtain a divorce, to register and vote, to make a will, or to exercise any other rights or privileges accorded to citizens of South Dakota solely by reason of his detention, admission or commitment under this title.

The specific provisions as well as the general reference to "any other rights or privileges" illustrate the legislature's desire to protect the rights of those committed to mental facilities as in this case. Thus, SDCL 27A–12–1.2 encompasses the alleged collateral consequences by Woodruff and Woodraska, and instructs their basic rights remain unaffected by their temporary commitment in the Center.

[¶ 13] Woodruff and Woodraska further argue that the possibility of the state obtaining a lien to recoup the cost of the care at the Center constitutes a collateral consequence to the involuntary commitment. Although there is no specific reference to liens in SDCL 27A–12–1.2, another statute, SDCL 27A–10–5, states that "a lien for the amount of [the costs related to commitment proceed-

ings] may be filed upon the person's real and personal property to insure payment." First of all, we note the discretionary nature of imposing a lien. Secondly, we emphasize that neither Woodraska nor Woodruff are presently subject to such a lien, and the mere chance that a lien will be sought is too speculative. *Brumnett v. Psychiatric Sec. Review Bd.*, 315 Or. 402, 848 P.2d 1194, 1196 (1993) (stating, "The mere possibility that the state might seek such an order at some future date is not sufficient to make dismissal inappropriate.").

[¶ 14] Woodruff and Woodraska also maintain the social stigma attached to being involuntarily committed constitutes collateral consequences sufficient to overcome mootness. Although such a stigma is recognized, it does not "rise to the level of collateral legal consequences[,]" mainly because "[r]estrictions imposed as the result of a commitment can be or are removed when the patient is discharged or released from active treatment." *Godwin v. State*, 593 So.2d 211, 214 (Fla. 1992).

### Capable of Repetition, Yet Evading Review

[¶ 15] For the "capable of repetition, yet evading review" exception to the mootness rule to apply, these two conditions must be met: " ' "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." ' " *Rapid City Journal*, 283 N.W.2d at 566 (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 377, 99 S.Ct. 2898, 2904, 61 L.Ed.2d 608, 620 (1979) (quoting *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 349, 46 L.Ed.2d 350, 353 (1975))). This exception is also known as the public interest exception. *Radulski ex rel. Taylor v. Delaware St. Hosp.*, 541 A.2d 562, 566 (Del 1988). According to the law in this State, when there are exceptional circumstances, there is a public interest exception to the mootness rule. *Sedlacek v. South Dakota Teener Baseball Program*, 437 N.W.2d 866, 868 (S.D.1989). In order for exceptional circumstances to exist, the following criteria must be met: "general public

importance, probable future recurrence, and probable future mootness." *Id.* (citing *Wheeldon v. Madison*, 374 N.W.2d 367 (S.D. 1985)).

[¶ 16] The circuit court found there was no issue of general public importance in this case, because the decision is "personal, with no effect upon the community or the people of the state in general." *See, e.g., In re Lesser*, 177 A.D.2d 489, 575 N.Y.S.2d 702, 703 (1991) (holding there was no public importance in the appeal regarding the mentally ill). Rather, the issue pertained to a factual determination. According to the circuit court, Woodruff and Woodraska simply disputed whether the evidence was sufficient for an involuntary commitment, a factual inquiry. *See, e.g., Lindquist v. Bisch*, 1996 SD 4, ¶ 15, 542 N.W.2d 138, 141.

[¶ 17] A similar dispute occurred in *In re Faucher*, 558 A.2d 705 (Me.1989), wherein the involuntarily committed person raised evidentiary issues on appeal. The court admitted the brief length of the commitment could lead to escaped review, but held, "[i]t is most unlikely, however, that the specific issue in the present case will be repeatedly presented." *Id.* at 706; *see also Carter v. Orleans Parish Pub. Schs.*, 725 F.2d 261, 263 (5thCir.1984) (noting the absence of a showing that a recurrence of placement in classes for the mentally ill was likely, and holding the claim was moot). Likewise, the repetition of the exact issue on this appeal, which is regarding a factual determination, is unlikely. Any conceivable future commitment would be based on the facts that occur at that time, and the facts of this case would be irrelevant.

[¶ 18] Woodruff contends on appeal that one of the issues argued to the circuit court included whether his due process rights were violated. Since the issue was not discussed or briefed, the circuit court found the issue waived. As such, we will not address the issue for the first time on appeal. *Watertown v. Dakota, Minn., & E. R.R.*, 1996 SD 82, ¶ 26, 551 N.W.2d 571, 577; *see also Smedley v. Smedley*, 319 Ark. 421, 892 S.W.2d 273, 274 (1995) (stating that since the argument

as to commitment of the mentally ill was not fully argued, it was moot).

[¶ 19] The factual determinations made by the circuit court are not clearly erroneous. Furthermore, based on these facts, we agree with the circuit court that the issues argued by Woodruff and Woodraska are moot due to their release from the Center.

[¶ 20] Affirmed.

[¶ 21] MILLER, C.J., and SABERS, KONENKAMP and GILBERTSON, JJ., concur.