#24907-a-SABERS, Retired Justice

**2009 SD 27**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

WILLIAM J. SULLIVAN,                                    Plaintiff and Appellant,

v.

STELLA M. SULLIVAN,                                    Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

\* \* \* \*
HONORABLE DOUGLAS E. HOFFMAN
Judge
\* \* \* \*

STEVEN M. JOHNSON and
RONALD A. PARSONS, JR. of
Johnson, Heidepriem, Abdallah
  and Johnson, LLP
Sioux Falls, South Dakota

and

KIMBERLY J. LANHAM of
Janklow Law Firm, Prof. LLC
Sioux Falls, South Dakota                    Attorneys for plaintiff
                                             and appellant.

RHONDA C. LOCKWOOD
Lockwood Law Office
Sioux Falls, South Dakota                    Attorneys for defendant
                                             and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON FEBRUARY 17, 2009

OPINION FILED **04/15/09**

#24907

SABERS, Retired Justice.

[¶1.]        William Sullivan (Bill) appeals the circuit court's decision permitting his ex-wife, Stella Sullivan, to take their minor children to the Philippines for three weeks during the summer of 2008 to visit their grandmother and relatives.  He also appeals the circuit court's decision declining his requests to modify the current visitation agreement.  We conclude that the first issue and a portion of the second issue are moot, and therefore we do not reach the merits, except that we affirm the remainder of the second issue.

## FACTS

[¶2.]        Bill is the President of Sullivan, Inc., an import distributor of home décor items, located in Sioux Falls, South Dakota.  He is responsible for research, product development, and pricing, and is required to travel extensively within the United States and overseas, particularly to Asia, for the business.  On one of his trips to Asia, Bill met Stella, a flight attendant originally from Cebu, Philippines.[1] Bill and Stella were married in Cebu on June 15, 1996, and lived in Sioux Falls thereafter.  Two children were born of the marriage, a daughter in 1997, and a son in 2000.  Bill filed for divorce on February 6, 2007, citing irreconcilable differences.

[¶3.]        Stella's mother, some of Stella's siblings, and extended family still live in Cebu.  During the marriage, the Sullivan family traveled to Cebu in 1997, 1998, 1999, 2001, 2004, and 2005.  Bill made an additional trip alone in 2005.  After Bill filed for divorce, Stella and the children visited Cebu on two occasions in 2007.

---

1.      Cebu is located in the southern part of central Philippines.

-1-

#24907

[¶4.] On September 18, 2007, Bill and Stella entered into a stipulation regarding custody and visitation ("September stipulation"). It provided that legal custody of the children would be jointly shared, and that Stella would have primary physical custody. An agreement regarding visitation was set forth in the stipulation.[2] On December 4, 2007, Bill and Stella entered into a stipulation

---

2. The stipulation provided in part:

> Visitation: The parties agree that Father shall have visitation on Thursday, September 13, 2007 from 3:15 p.m. to Sunday, September 16, 2007 at 7:00 p.m. The parties have further agreed to the following visitation arrangement, which shall commence effective the week of October 18, 2007, with Father's first weekend visitation occurring on Thursday, October 18, 2007. The parties further agree that where there is a need for a babysitter to provide care for the children for more than four hours, that they will give the other parent advanced notice of the opportunity to care for the children during that time.
>
> **School year:** The parties agree that the visitation for the school year and when Father is in town will be as follows:
>
> **Alternating weekends and weekdays.** The parties agree that Father shall have visitation every Thursday from 3:15 p.m. to the next morning either taking the children to school or if there is no school that Friday then to Mother's house by 3:15 p.m. The parties further agree that Father shall have visitation every other weekend from Friday 3:15 p.m. to Sunday at 7:00 p.m.
>
> * * *
>
> **Summer Visitation (June, July, August):** The parties agree that Father shall have the children for six weeks of visitation during the school summer break. The dates will later be determined by the parties or Court. The parties agree that if Father is in town during Father's visitation, then Mother shall have visitation on Tuesday from 3:00 p.m. to 7:00 p.m. or upon advanced agreement with Father on one day from 12:00 p.m. to 7:00 p.m. or some portion thereof. Conversely, if Mother is in town during Mother's visitation, then Father shall have visitation on Tuesday from 3:00 p.m. to 7:00 p.m. or upon advanced agreement with Mother on one day from 12:00 p.m. to 7:00 p.m. or some portion thereof.

regarding property division, alimony, and child support ("December stipulation"). It included a paragraph pertaining to international travel:

> The parties agree that neither of them shall take the minor children, or either of them, on any international trips outside of the United States without permission of the other, or order of the Court. As part of this Agreement, the law firm of Johnson, Heidepriem, Janklow, Abdallah & Johnson shall hold in safekeeping the passport of [the son], and the law firm of Boyce, Greenfield, Pashby & Welk shall hold in safekeeping the passport of [the daughter]. The passports for the minor children shall not be released to either of the parties unless and until the parties have agreed upon arrangements for international travel or until the Court has entered an order with respect to this matter.

[¶5.] In early 2008, Stella decided that she wanted to take the children to the Philippines to visit her family. After mediation between Bill and Stella proved unsuccessful, Stella filed a motion with the circuit court on March 13, 2008, requesting permission to travel with the children to the Philippines to visit the children's grandmother and extended family. She also requested custody of the children's passports, a determination of summer visitation, and attorney's fees related to the motion. After hiring new counsel, Stella filed another motion on April 22, 2008, requesting: (1) an order allowing Stella to take the minor children out of the country during her extended summer visitation; (2) a determination of a definite schedule for all summer calendars; (3) custody of the minor children's passports; (4) that all other aspects of the visitation regarding the minor children remain the same; and (5) such other relief deemed just and equitable by the court.

[¶6.] In response, Bill filed a motion on May 2, 2008, requesting: (1) that he have visitation May 15 -18, 2008, consistent with the September stipulation addressing alternate weekend and holiday visitation; (2) his six weeks of summer

visitation be May 25, 2008 through June 8, 2008, June 22, 2008 through July 6, 2008, and July 20, 2008 through August 3, 2008; (3) an additional day of visitation every other week during the school year to compensate for the visitation he is unable to exercise due to his work-related travel;[3] (4) permission for Bill's mother to pick up and return the children when Bill is unable during his weekly Thursday visitation; (5) granting Bill visitation every President's Day holiday in exchange for Stella having visitation every Easter holiday; (6) clarification of the regular weekly visitation schedule; (7) that neither parent prevent the other parent from establishing contact with the children by telephone; (8) that visitation with the children on their respective birthdays is alternated annually, and that when it is a parent's birthday, the children spend the day with the parent who is celebrating the birthday; and (9) attorney's fees. Four days later on May 6, 2008, Bill filed a motion resisting Stella's request to take the children to the Philippines. He expressed his concerns of terrorist threats and gang kidnapping for ransom occurring in the Philippines, as evidenced by travel warnings issued by the United States Department of State, the Overseas Security Advisory Council, and government

---

3.    In his brief, Bill explained that his rigorous business travel schedule made it difficult to exercise his regular and extended visitation with his children. It noted:

> In both March and April of this year, for example, [Bill] was unable to see his children for more than twenty consecutive days, and only able to see them for 8 days in a 63-day period from mid-March to mid-May of 2008. Under the current schedule, from the middle of August to November 2007, Bill was only able to see his children 17 days out of 107, or about fifteen percent of the time, while Stella had the children for the other 90 days. In 2007, Bill had a total of 55 overnight visits with his children, again amounting to fifteen percent of the time.

departments in other countries. Bill also expressed concern that because the Philippines is not a signatory on the Hague Convention on Child Abduction, Stella could take the children to the Philippines, decide not to return, and he would have no recourse.

[¶7.]     The court conducted a hearing regarding the motions on May 12, 2008. After listening to testimony from Stella and Bill, and oral argument by their respective counsel, the court granted Stella permission to travel with the children to the Philippines for three weeks during the summer of 2008. With respect to Bill's six weeks of summer visitation with the children, counsel for both sides went back and forth indicating their client's preference for the dates. Ultimately, the court agreed with Stella's proposal that Bill could exercise visitation during the two weeks available in May, four weeks in June, and one more week in July, before the children left for the Philippines, and told Stella's counsel to "fill in the blanks on the dates" unless something different could be negotiated. The court directed Bill and Stella to provide each other with travel itineraries and contact numbers while traveling. Lastly, voicing his distaste for micromanagement, the court denied Bill's requests for alternating birthday visitation, additional visits during the school year, and having grandparents do substitute visits when Bill is traveling. The court entered an order to this effect on May 23, 2008.

[¶8.]     On June 5, 2008, Bill filed his notice of appeal to this Court. The following day, he moved to stay the order permitting Stella to travel with the children to the Philippines to the circuit court. The motion was denied by the circuit court, and subsequently appealed to this Court and similarly denied.

Pursuant to court order, Stella and the children left for the Philippines on July 10, 2008, and returned safely to Sioux Falls.

## ANALYSIS

[¶9.] **1. Whether the question regarding the circuit court's grant of international travel with the children is moot.**

[¶10.] Stella contends this Court should not consider the issue of whether the circuit court abused its discretion in granting Stella's request to travel with the children because it is moot as the requested travel has occurred and the children have since returned to Sioux Falls. Bill responds that the facts of this case fall within an exception to the moot doctrine, and therefore, this Court should reach the merits of this issue.

[¶11.] This Court will only decide "actual controversies affecting people's rights." *In re* Woodruff, 1997 SD 95, ¶10, 567 NW2d 226, 228 (citing Rapid City Journal v. Circuit Ct., 283 NW2d 563, 565 (SD 1979)). "'Accordingly, an appeal will be dismissed as moot where, before the appellate decision, there has been a change of circumstances or the occurrence of an event by which the actual controversy ceases and it becomes impossible for the appellate court to grant effectual relief.'" *Id.* (quoting *Rapid City Journal*, 283 NW2d at 565). *See also* Boesch v. City of Brookings, 534 NW2d 848, 849 (SD 1995); Aetna Life Ins. Co. v. Satterlee, 475 NW2d 569, 572 (SD 1991); Investigation of the Highway Constr. Indus. v. Bartholow, 373 NW2d 419, 420-21 (SD 1985); Stanley County Sch. Dist. No. 57-1 v. Stanley County Educ. Ass'n, 310 NW2d 162, 163 (SD 1981) (quoting Dodds v. Bickle, 77 SD 54, 58, 85 NW2d 284, 286 (1957); City of Plankinton v. Kieffer, 69 SD 597, 13 NW2d 298, 301 (1944)). Since this appeal was filed, Stella and the children

traveled to the Philippines for three weeks in July 2008, and returned to Sioux Falls. Therefore, a judgment rendered on the underlying issue "will have no practical legal effect upon the existing controversy." *Investigation of the Highway Constr. Indus.*, 373 NW2d at 421 (citations omitted).

[¶12.]    There are exceptions to the mootness rule, however, which allow a full determination of the case. One exception is the "capable of repetition, yet evading review" exception.[4] Two conditions must be met for this exception to apply: "'(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again.'" *Woodruff*, 1997 SD 95, ¶15, 567 NW2d at 229 (quoting *Rapid City Journal*, 283 NW2d at 566 (additional citations omitted)). We agree that the first condition has been met, as the trip to the Philippines has long since been completed prior to this Court considering the case.

[¶13.]    It is the second condition that is troubling under the facts of this case. After granting Stella permission to travel with the children to the Philippines, the court clarified that "it's not something I'm going to approve every summer . . . . But what I would anticipate, unless circumstances change, would be considering a bi-annual opportunity to go visit family in the Philippines." We recognize that the general issue of Stella wanting to take her children to the Philippines may arise in the future. However, the exception is more limited. "A *theoretical* possibility of

---

4.    In *Woodruff*, we recognized that this exception is also known as the public interest exception. 1997 SD 95, ¶15, 567 NW2d at 229.

repetition will not constitute an exception to the mootness doctrine: '[T]here must be a "reasonable expectation"' or a "'demonstrated probability" that the *same controversy* will recur involving the same complaining party.'" *Boesch*, 534 NW2d at 850 (quoting Murphy v. Hunt, 455 US 478, 482, 102 SCt 1181, 1184, 71 LEd2d 353 (1982) (additional citation omitted)) (emphasis added). Bill's opposition to the travel was based upon his concern for his children's safety while visiting the Philippines in 2008. This controversy is premised upon alleged factual circumstances – terrorist threats, kidnapping threats, and the Philippines not adopting the Hague Convention – circumstances that could change at any time, especially in two years' time. When a controversy is premised purely on factual circumstances, "repetition of the exact issue . . . is unlikely." *Woodruff*, 1997 SD 95, ¶17, 567 NW2d at 229. Therefore, application of the capable of repetition, yet evading review exception is precluded due to the facts of this case. The issue of whether the circuit court abused its discretion by permitting Stella to travel with the children to the Philippines during the summer of 2008 is moot and we "decline to express an opinion . . . which can have no practical effect on the litigants." *Boesch*, 534 NW2d at 849.

[¶14.]      **2.     Whether the circuit court abused its discretion in refusing to modify the stipulation regarding visitation.**

[¶15.]      Bill claims that the circuit court abused its discretion first, by not allowing him to determine the dates of his six weeks of summer visitation, and second, by not granting his request for an extra day of visitation every other week during the school year.

[¶16.]     With regard to the first contention of error relating to the six weeks of summer visitation, both parents voiced their preference for the dates of the summer visitation during the May 12, 2008 hearing. When the parties were unable to agree, the court said, "Well, I can either pick arbitrary dates, or you folks can tell me that you are going to work this out." Then Stella's counsel indicated that the court should decide and informed the court that before Stella and the children leave for the Philippines, at least two weeks in May, four weeks in June, and one more week in July were available for Bill's visitation. Bill, however, wanted some of the visitation to occur after the children returned from the Philippines and before he left for Asia in August. Before this request was reiterated to the court, the court said, "Well, that's what I'm going to order. [Stella's counsel] can fill in the blanks on the dates . . . but if you negotiate something different, I'm fine with that." Apparently nothing different was negotiated and Bill exercised visitation on the dates designated by Stella. Once again, the six weeks of visitation for the summer of 2008 has already occurred. Moreover, the court did not indicate that it was going to allow Stella to determine the dates of Bill's visitation every summer. Therefore, for the reasons articulated above, this allegation of error is rendered moot.

[¶17.]     Bill's last contention is that the circuit court abused its discretion by not granting his request for an additional day of visitation during the school year to compensate for the visitation missed when he is traveling for business.

[¶18.]     Circuit courts are provided broad discretion in questions of custody and visitation. Weber v. Weber, 529 NW2d 190, 191 (SD 1995). This Court reviews the circuit court's determinations on these issues for an abuse of discretion.

Fuerstenberg v. Fuerstenberg, 1999 SD 35, ¶22, 591 NW2d 798, 807. *See also* Osgood v. Osgood, 2004 SD 22, ¶9, 676 NW2d 145, 148. An abuse of discretion "is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable." Arneson v. Arneson, 2003 SD 125, ¶14, 670 NW2d 904, 910 (citation omitted). Under this standard, "we do not inquire whether we would have made the same decision. Instead, we decide only whether the circuit court could reasonably reach the conclusion it did in view of the applicable law and the circumstances of the case." Maxner v. Maxner, 2007 SD 30, ¶12, 730 NW2d 619, 622.

[¶19.]        In denying the request, the court said,

> I just think that that's micro-managing things. I realize Mr.
> Sullivan has a difficult schedule. I realize the fact that he runs
> a business [and] . . . has significant assets and income, which is
> a huge benefit not only to his former spouse but also to his
> children, and he shouldn't be penalized because of those things.
> But at the same time that's just a reality of his life, and I am
> hesitant and reticent to overly complicate the schedule that the
> parties stipulated to six months ago, so I want to leave that in
> place for a while longer and see if we can get through the
> summer and encourage the parties to be flexible, to revisit these
> issues, and if we need to take a closer look at some of these other
> issues at a later time when we have more time, we can certainly
> do that.

[¶20.]        Similarly, we recognize that due to Bill's extensive travel schedule, he is unable to exercise all of his designated visitation. *See* footnote 3, *supra.* He is only requesting approximately eight additional days of visitation per year. However, we cannot say that the circuit court's denial of the same was "a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration is arbitrary or unreasonable." *Arneson,* 2003

SD 125, ¶14, 670 NW2d at 910. The circuit court acknowledged that it would be willing to reconsider its decision in the future. If the current circumstances are such that Bill is unable to fully exercise his visitation rights, he may move the court to reconsider his request. Accordingly, the circuit court is affirmed.

[¶21.]     Pursuant to SDCL 15-26A-87.3, Stella moved this Court for appellate attorney's fees in the amount of $6,724.67. After considering the factors set forth in *Barnes v. Matzner*, 2003 SD 42, ¶24, 661 NW2d 372, 379, we award Stella $2,500.

[¶22.]     GILBERTSON, Chief Justice, and MEIERHENRY, Justice, concur.

[¶23.]     KONENKAMP and ZINTER, Justices, dissent.


KONENKAMP, Justice (dissenting).

[¶24.]     Child custody disputes are uniquely capable of repetition. That is a sad reality. In ignoring this reality, the Court declares moot a controversy that is reasonably capable of arising again between these parents. Indeed, the circuit court ordered that the question here "shall be considered" every two years. Thus the issue is not moot, and we should not evade our responsibility to decide it.

[¶25.]     At issue is the mother's request to take the parties' children to visit relatives in her "homeland" in the Philippine Islands. The parents have joint custody of their children, and they have agreed that neither parent may take the children outside the United States without the consent of the other. In a hearing on the mother's request to take the children to the Philippines, the father presented compelling evidence, unnecessary to recount in detail here, that westerners in

general, and these children in particular, may be in serious danger if they travel to the location in the Philippines where the mother wished to go.

[¶26.] He based his concerns on explicit U.S. Department of State travel warnings, as well as on his personal experiences as an international business traveler in Southeast Asia. He was also concerned about the mother's possible intention not to return with the children and his lack of legal recourse in that event. The Republic of the Philippines is not a signatory to the 1980 Hague Convention on the Civil Aspects of International Abduction of Children. Overruling the father's objections, the circuit court ordered that the mother could take the children to the Philippines in the summer of 2008. Because the mother later returned with the children to South Dakota, this Court deems moot any consideration of the father's appeal. The Court finds that return trips are only "theoretical," despite the circuit court's written order that it "shall" consider biannual overseas trips for the mother and children.

[¶27.] By long-standing rule, a question technically moot will not be considered moot if it is capable of repetition yet evading appellate review. This doctrine is limited to situations "where the following two circumstances [are] simultaneously present: '(1) the challenged action [is] in its duration too short to be fully litigated prior to cessation or expiration, and (2) there [is] a reasonable expectation that the same complaining party [will] be subject to the same action again[.]'" Lewis v. Cont'l Bank Corp., 494 US 472, 481, 110 SCt 1249, 1255, 108 LEd2d 400 (1990) (citation omitted) (first alteration added, subsequent alterations in original). The Court correctly restates this rule and concedes that the first part

of the test has been shown. In finding that the second part has not been met, the Court mistakenly equates "reasonable expectation" with "demonstrated probability." Those standards — "reasonable expectation" or "demonstrated probability" — are viewed in the disjunctive, so that certain questions may be capable of repetition based on reasonable expectations that are not necessarily demonstrably probable. Honig v. Doe, 484 US 305, 319 n6, 108 SCt 592, 602 n6, 98 LEd2d 686 (1988). As the Supreme Court in *Honig* emphasized, "[o]ur concern in these cases, as in all others involving potentially moot claims, was whether the controversy was *capable* of repetition and not . . . whether the claimant had demonstrated that a recurrence of the dispute was more probable than not." *Id.* (emphasis in original).

[¶28.]    This Court also errs in suggesting that the next projected trip to the Philippines is too far in the future and that "circumstances could change at any time, especially in two years' time." Never mind that it is now close to one year before the next projected trip, and probably less than one year before the next circuit court hearing on the mother's travel plans. But, more importantly, the requirement of "capable of repetition" has never been limited by a requirement of imminence. An issue is not moot if the events are capable of repetition "at any time." Washington v. Harper, 494 US 210, 219, 110 SCt 1028, 1035, 108 LEd2d 178 (1990) (citation omitted); *see also* Christian Knights of Ku Klux Klan Invisible Empire, Inc. v. District of Columbia, 972 F2d 365, 371 (DCCir 1992); Arkansas Gas Consumers, Inc. v. Arkansas Pub. Serv. Comm'n, 118 SW3d 109 (Ark 2003).

[¶29.]    Our Court has had little experience with domestic relations disputes over travel abroad, especially in light of the modern reality of international terrorism and Third World instability. Other courts, however, have dealt with these issues and have created some helpful criteria for trial courts to apply before allowing one parent, over the objection of the other, to travel overseas with the children. *See, e.g.*, Abouzahr v. Matera-Abouzahr, 824 A2d 268, 282 (NJ 2003) (setting forth eight factors for courts to apply). We would do well to consider these authorities and require the circuit court here to use some recognized criteria for making these types of decisions. The circuit court in this case entered no written findings of fact or conclusions of law. We have only its oral remarks.

[¶30.]    The father has an absolute right to have a circuit court decision regarding his children's custody, temporary or otherwise, reviewed and modified if necessary by this Court. *See* SDCL 25-4-46. That right is effectively denied when we fail to allow adequate time for the matter to be considered on appeal. On May 23 of last year, when the circuit court signed its order granting the mother permission to travel on July 10 to the Philippines with the children, the father had only a few weeks to obtain appellate review before she left. By the time the father's request for a stay reached this Court, the mother had already purchased the airline tickets. Obviously, scarce time was left to permit a full and fair review of the decision.

[¶31.]    We do great disservice to children, whose best interests we are bound to uphold, when we deny meaningful appellate review of rulings that may affect their safety and, indeed, their very lives. This Court concedes, as it must, that this

controversy "may arise in the future." How could it not, given the circuit court's order that "Biannual overseas travel for [the mother] and children shall be considered[.]" Without a doubt, therefore, the issue is "capable of repetition." To deny this is to deny meaningful appellate review.

[¶32.] ZINTER, Justice, joins this dissent.