E.C.O.[1] *vs.* GREGORY JAMES COMPTON.[2]

Essex. November 8, 2012. - March 13, 2013.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Abuse Prevention. Due Process of Law,* Abuse prevention. *Consent.*

This court vacated an extension of an abuse prevention order sought by a parent to prevent his sixteen year old daughter from voluntarily engaging in a sexual relationship with the adult defendant, where the defendant's conduct did not rise to the level of abuse as defined in G. L. C. 209A. [561-563]

This court concluded that the relationship between a defendant and a sixteen year old could be a substantive dating relationship within the meaning of the abuse prevention statute, G. L. C. 209A, even though the relationship developed and was conducted primarily through electronic media. [563-565]

COMPLAINT for protection from abuse filed in the Salem Division of the District Court Department on September 30, 2011.

The case was heard by *Michael C. Lauranzano,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Mark D. Engel* for the defendant.

*Robert F. Peck (Henry Porter* with him) for the plaintiff.

*Wendy M. Berg, Christina L. Paradiso, Edward M. Ginsburg, Jessica Woodman-Hardy,* & *Jeff N. Sakol,* for Community Legal Aid, amicus curiae, submitted a brief.

IRELAND, C.J. This case concerns whether a parent may seek an extension of an abuse prevention order under G. L. c. 209A to prevent his daughter, who was sixteen years of age, from voluntarily engaging in a sexual relationship with an adult.[3] Following a hearing before a District Court judge, an ex parte

---

[1] On behalf of his minor daughter, A.O.

[2] As is our custom, we spell the defendant's name as it appears in the complaint. See *Commonwealth* v. *Maker,* 459 Mass. 46, 46 n.1 (2011).

[3] A person sixteen years of age or older is legally capable of "consenting" to sexual intercourse. See G. L. c. 265, § 23; G. L. c. 277, § 39.

abuse prevention order obtained pursuant to G. L. c. 209A, § 4, by a father on behalf of his daughter against the defendant, Gregory James Compton, was extended for one year pursuant to G. L. c. 209A, § 3. The defendant appealed to the Appeals Court. He asserts that the evidence was insufficient to support a finding of abuse and that the order should not have been extended because he and the plaintiff were not in a "substantive dating relationship" as required by G. L. c. 209A, § 1 (*e*). We transferred the appeal to this court on our own initiative. Because there was no basis for the judge to conclude that the defendant's conduct rose to the level of "abuse" as defined by G. L. c. 209A, § 1, the extension order must be vacated.

1. *Facts*. We recite the facts based on the record before us. See *Caplan* v. *Donovan*, 450 Mass. 463, 464 n.1, cert. denied, 553 U.S. 1018 (2008). In July, 2011, while traveling in Europe with her mother and grandmother, the daughter, who was sixteen years of age, met the defendant, a citizen of the United Kingdom who was twenty-four years of age. In conversation with the defendant, the daughter falsely indicated that she was born in 1992, thus making her eighteen or nineteen years of age. They exchanged contact information. A few days later, the defendant took the daughter on a tour of the area surrounding London.

The daughter returned home and maintained communication with the defendant through various electronic means, including electronic mail messages (e-mail), instant messaging,[4] Skype,[5] and Facebook.[6] The defendant does not dispute that the daughter, early in their communications, informed him that she was born in 1994, thus making her sixteen years of age.

---

[4]"Instant messaging" is "a form of computer communication in which individuals hold an online conversation via the [I]nternet . . . . [The] message is transmitted instantaneously . . . allow[ing] both parties . . . to respond immediately." *Commonwealth* v. *Disler*, 451 Mass. 216, 218 n.3 (2008), quoting *State* v. *Lott*, 152 N.H. 436, 437 (2005).

[5]Skype is "a proprietary [I]nternet-based computer software system that provides two-way visual and voice communication." *Rivera* v. *State*, 381 S.W.3d 710, 711 n.2 (Tex. Ct. App. 2012).

[6]"Facebook is an online social network where members develop personalized [W]eb profiles to interact and share information with other members." *Lane* v. *Facebook, Inc.*, 696 F.3d 811, 816 (9th Cir. 2012). We have referred to Facebook as "a social networking Web site." *Commonwealth* v. *Purdy*, 459 Mass. 442, 450 (2011).

Copies of various e-mails and instant messaging conversations demonstrated a mutual attraction between the daughter and the defendant and ongoing consensual electronic communications between them.[7] In these communications, the defendant refers to the daughter as "babe," "honey bee," and "my love," and ends communication by writing, "lov u: heart" and "xxx." In addition to telling the plaintiff that she is "amazing," the defendant talks about visiting her, their first lunch date, "a v gd hotel" where she could visit him, and engaging in conversation "with a glass of somthing gd in our hands." The defendant's communications include many sexual innuendos. He also graphically and expressly made known to her his intentions to engage in sexual relations with her. In their electronic exchanges, they discussed the "age of consent" to engage in sexual intercourse (see note 3, *supra*), as well as the age difference and physical "distance" between them. Despite these "challenges," the defendant stated, "i wouldnt even entertain this normally but with you it[] just makes sense."

The defendant made plans to visit the Boston area in October and wrote to the daughter about how they would spend their time together on his arrival. The defendant indicated he wanted "a day spent in each others arms (make tht a few)," acknowledged her parents' disapproval of their "relationship,"[8] and noted that they would have to "sneak[] about." He suggested a "sneaky sleepover" while he was in town and asked the daughter where she liked to be touched. The defendant reserved a room at an inn near her home and planned the trip during a time when her parents would be out of town.

---

[7]In his affidavit, the defendant states that for "several weeks," he communicated with the daughter "by means of Skype, instant messaging, e-mail and Facebook." It appears that these communications began in July, 2011, and ended in late September, 2011. The exact frequency of the communications is not specified in the record, although it appears that the communications occurred on a fairly regular basis. Copies of three lengthy instant messaging exchanges between the defendant and the daughter were included in the record as examples of their communications.

[8]At some point before September 30, 2011, the parents became aware of their daughter's communications with the defendant. They expressed their disapproval to their daughter and told the defendant that they felt that "this relationship" was inappropriate and requested that he stop communicating with her.

On September 30, 2011, the father filed a complaint for protection under G. L. c. 209A against the defendant and obtained an ex parte order effective until the next hearing date of October 11.[9],[10] On October 4, the defendant, who was found in the town in which he had planned to reserve his room, was served with the order. On October 11, a hearing before a different District Court judge was held to determine whether the ex parte order should be extended. The father appeared pro se, and the defendant was present and was represented by counsel. The daughter did not appear or testify.

In addition to submitting his affidavit, the father provided the judge with copies of some of the electronic communications between the defendant and the daughter. During cross-examination by defense counsel, the father admitted that the defendant had not threatened physical harm to the daughter. Nor did the father have any evidence that the defendant "caused [the daughter] to engage involuntarily in sexual relations by force, threat, or duress." In addition to filing an affidavit, the defendant testified. Much of his testimony was indiscernible by the court reporter because of noise, but the defendant testified that he "would never do anything that could possibly hurt [the daughter]." He testified that he told the mother that he would not have contact with the daughter and claimed that he "kept to that."[11]

The judge rejected defense counsel's arguments that an abuse prevention order was inappropriate because there were no allegations of physical abuse or involuntary sexual conduct, and no evidence of a substantive dating relationship. The judge did not explain, however, on what basis he found abuse or the existence of a substantive dating relationship. He extended the abuse prevention order "in all respects" for one year. This appeal followed.[12] The father is represented by counsel on appeal.

2. *Discussion.* We review the issuance of an order pursuant to

---

[9]In the complaint, the father alleged that the defendant posed a safety threat to his daughter, asserting that the defendant intended to travel to the United States to "us[e] alcohol with her while here" and to have sex with her.

[10]The order directed the defendant to refrain from abusing the daughter, to refrain from contacting the daughter, and to stay away from the family residence.

[11]No further explanation appears on the record because of "background noise."

[12]It appears that the extension order has expired. The appeal, however, is

G. L. c. 209A for an abuse of discretion or other error of law. *Crenshaw* v. *Macklin,* 430 Mass. 633, 636 (2000). "We accord the credibility determinations of the judge who 'heard the testimony of the parties . . . [and] observed their demeanor' . . . the utmost deference." *Ginsberg* v. *Blacker,* 67 Mass. App. Ct. 139, 140 n.3 (2006), quoting *Pike* v. *Maguire,* 47 Mass. App. Ct. 929, 929 (1999).

General Laws c. 209A enables a person "suffering from abuse from an adult or minor family or household member" to obtain a protective order directing the defendant, among other things, to refrain from abuse or contact. G. L. c. 209A, § 3. Under G. L. c. 209A, § 1 (*e*), family or household members include persons who "are or have been in a substantive dating or engagement relationship." "Abuse" is defined as "the occurrence of one or more of the following acts between family or household members: (*a*) attempting to cause or causing physical harm; (*b*) placing another in fear of imminent serious physical harm; (*c*) causing another to engage involuntarily in sexual relations by force, threat or duress." G. L. c. 209A, § 1. The issuance of an abuse prevention order is a civil procedure, and abuse need only be proved by a preponderance of the evidence. See *Jordan* v. *Clerk of the Westfield Div. of the Dist. Court Dep't,* 425 Mass. 1016, 1017 (1997). A violation of an order to refrain from abuse or contact, however, is a crime, punishable by a fine or imprisonment in a house of correction, or both. G. L. c. 209A, § 7, fifth par. See *Commonwealth* v. *Finase,* 435 Mass. 310, 313-314 (2001).

Here, as conceded by the father, the defendant has neither physically harmed nor attempted physically to harm the daughter. In addition, because she is over the age of sixteen, she is legally capable of "consenting" to sexual intercourse, see note 3, *supra,* and as admitted by the father, the defendant has not caused the daughter to engage *involuntarily* in sexual relations

not moot. See *Smith* v. *Jones,* 67 Mass. App. Ct. 129, 133 (2006), quoting *Wooldridge* v. *Hickey,* 45 Mass. App. Ct. 637, 638 (1998) ("Notwithstanding that both the ex parte and the extension orders have expired, the appeal is not moot. The defendant 'could be adversely affected by [the orders] in the event of future applications for an order under G. L. c. 209A . . . [and] has a surviving interest in establishing that the orders were not lawfully issued, thereby, to a limited extent, removing a stigma from his name and record' ").

by force, threat, or duress. Thus, there was no basis for the judge to issue the extension order under G. L. c. 209A, § 1 (*a*) or (*c*).

The father contends that the defendant's actions placed the daughter "in fear of imminent serious physical harm" under G. L. c. 209A, § 1 (*b*), because in suggesting that he was going to supply the plaintiff with alcohol, the defendant essentially offered to supply alcohol to a minor in violation of G. L. c. 138, § 34 ("whoever furnishes . . . alcohol for a person under 21 years of age shall be punished by a fine . . . or by imprisonment for not more than one year or both"). We disagree.

The definition of "abuse" under G. L. c. 209A, § 1 (*b*), closely approximates the common-law definition of the crime of assault, and we are guided by our definition in considering whether the defendant's conduct rose to such level of "abuse" under the statute. See *Commonwealth* v. *Gordon*, 407 Mass. 340, 349-350 (1990). We consider whether the defendant's conduct placed the daughter in "reasonable apprehension that [the defendant] might physically abuse her." *Id.* at 350. The defendant's passing references in his electronic communications with the daughter implying that he might furnish her with alcohol, while understandably reprehensible to the father, is not evidence suggesting physical abuse or evidence that the defendant planned to give alcohol to her in order to have involuntary sexual relations with her, certainly a form of physical abuse. We conclude that this conduct does not meet the definition of "abuse" under G. L. c. 209A, § 1 (*b*), and thus fails to serve as a basis for issuing the extension order.[13] Because the judge had no basis to issue the extension order, it must be vacated.

Our conclusion, that there was no "abuse" as required by the statute, obviates the need to decide whether the father proved by a preponderance of the evidence that his daughter and the defendant were engaged in a "substantive dating relationship" within the meaning of G. L. c. 209A, § 1 (*e*). Nevertheless, because it would be instructive in other cases, we conclude that

---

[13]Were the defendant actually to furnish alcohol to the daughter, such conduct would violate G. L. c. 138, § 34 (furnishing alcohol to minor), and G. L. c. 119, § 63 (contributing to delinquency of minor), and would present a different circumstance than existed here.

there was evidence of a substantive dating relationship in the circumstances of this case.

General Laws c. 209A, § 1, directs courts to adjudge the existence of substantive dating relationships by considering four factors: "(1) the length of time of the relationship; (2) the type of relationship; (3) the frequency of interaction between the parties; and (4) if the relationship has been terminated by either person, the length of time elapsed since the termination of the relationship." Here, there was a three-month relationship that involved regular mutual communication. Although, after the daughter's return home from Europe, that communication occurred electronically, many of the transmissions, such as those through instant messaging and Skype, involved "real-time" communication and face-to-face communication, thus adding a level of intimacy to the relationship. Significantly, the parties to the relationship did not stand on equal footing in terms of emotional maturity. One party to the relationship was a minor, to whom we afford unique protection, see *Commonwealth* v. *A Juvenile (No. 1)*, 389 Mass. 128, 132 (1983), and the other party was an adult who held himself out to "love" the minor. The content of the conversations were intimate, reflected a mutual romantic relationship, and expressed a mutual desire to engage in sexual relations. In these circumstances, we conclude that a substantive dating relationship was established. If the defendant had threatened to harm the daughter (rather than seeking to engage in a consensual sexual relationship with her), G. L. c. 209A should be available to protect her.

Our conclusion comports with fulfilling the remedial purpose of the statute. See *C.O.* v. *M.M.*, 442 Mass. 648, 653 (2004) (noting that, when enacting abuse prevention statute, "Legislature intended to address violence stemming from relationships which may not be considered traditional 'family or household' associations" and that judicial guidelines on abuse prevention properly instruct courts to afford broad meaning to term "substantive dating relationship" to protect remedial purpose of the statute). It also reflects the changing nature of relationships and, specifically, the fact that an increasing number of relationships, including ones involving teenagers, are being conducted electronically. See *id.* ("Dating is inherently personal and idiosyncratic, and

relationships exist in endless variety"). See also King-Ries, Teens, Technology, and Cyberstalking: The Domestic Violence Wave of the Future?, 20 Tex. J. Women & Law 131, 152 (2011) (study results showed teenagers "are incorporating technology into their intimate relationships"). Chapter 209A must be interpreted to protect all who are in a substantive dating relationship from abuse, regardless of whether the relationship was developed or conducted by the use of technology.

3. *Conclusion.* The abuse prevention extension order issued October 11, 2011, is vacated. The District Court judge shall cause a notification and direction to be sent, conformably with G. L. c. 209A, § 7, third par., for the destruction of all records of the vacated order. See *Carroll* v. *Kartell*, 56 Mass. App. Ct. 83, 87-88 (2002).

*So ordered.*