#28706-dismissed-SRJ
**2019 S.D. 38**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DANIEL LEWIS on behalf of
minor child E.L.,                                         Petitioner,

      v.

CHRISTOPHER GARRIGAN,                  Respondent and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JANE WIPF PFEIFLE
Judge

* * * *

DANIEL LEWIS
Rapid City, South Dakota                       Pro Se Petitioner.

KIRSTEN K. AASEN
Rapid City, South Dakota

PATRICIA A. MEYERS
Rapid City, South Dakota                       Attorneys for Respondent
                                                  and Appellant.

* * * *

CONSIDERED ON BRIEFS ON
APRIL 29, 2019
OPINION FILED **07/02/19**

#28706

JENSEN, Justice

[¶1.]     Daniel Lewis, on behalf of his minor daughter E.L., sought a protection order against Christopher Garrigan after learning that he was a registered sex offender. At the time the petition was filed, Garrigan was in a romantic relationship with Daniel's ex-wife, Theresa. Daniel also requested his sons B.L. and L.L. be included as additional protected persons in the protection order. The circuit court entered a protection order against Garrigan on August 23, 2018. The order prohibited Garrigan from coming within a distance of 100 yards of the children. Garrigan appeals the stalking order, which expired by its own terms after six months. We dismiss as moot.

## Facts and Procedural History

[¶2.]     Daniel and Theresa had three children during their marriage; E.L., B.L., and L.L. Theresa commenced a divorce against Daniel in March 2016. While the divorce was pending, custody of the children alternated weekly between Daniel and Theresa. In April 2018, Theresa and Garrigan began a relationship. Daniel learned of the relationship from his children. The children told Daniel that Garrigan would come to Theresa's house after she got home from work, would stay after they went to bed, and accompanied Theresa and the kids on road trips.

[¶3.]     The divorce was finalized in July 2018. The parties agreed to continue the shared custody arrangement. About the same time the divorce was concluded, Daniel learned that Garrigan was previously convicted of felony sexual contact with his own minor daughter. Daniel informed Theresa of his discovery by text message

-1-

and asked that Theresa not allow Garrigan to be around their children. Theresa did not respond to the text message.

[¶4.] The next day, Daniel filed a petition and affidavit for a protection order on behalf of his children against Garrigan. The petition claimed stalking against Garrigan because of his alleged contact with the children as a convicted child sex offender. The affidavit in support of the petition alleged that on one occasion when the children were dropped off following their time with Theresa, E.L. ran to Daniel crying and asked to never go back to Theresa's house, but she did not explain why she was upset. The affidavit also alleged the children's therapist, Tom Bosworth, was concerned because E.L.'s "emotional and mental states [put her in] high risk of being sexualy [sic] assaulted by a child predator." Daniel indicated in the petition that he had no knowledge of Garrigan harming the children but wanted the order to ensure his children were safe.

[¶5.] A hearing on the petition was held on August 23, 2018. Daniel appeared pro se and testified along with Bosworth. Dr. Dewey Ertz, a therapist specializing in sex offender treatment, also testified. Garrigan did not testify. Daniel admitted that he had not personally seen Garrigan around the children and had no direct knowledge of Garrigan's contact with the children.[1] Bosworth expressed general concerns about the children being around a registered sex offender, but admitted his concerns were not based on any personal knowledge of Garrigan's case or situation. Bosworth testified that he had raised his concerns to

---

1. Daniel provided one photograph of Theresa and Garrigan with L.L. in the background.

Theresa and explained, "[d]uring that conversation [Theresa] related to me that [Garrigan], when he was intoxicated, sexually offended his daughter by lifting her shirt up and touching her breasts. And it was a one-time incident."

[¶6.] Dr. Ertz testified that Garrigan was classified as a "low-level risk" re-offender since he had been compliant with his parole plan. Dr. Ertz also testified that he met with Garrigan and Theresa to counsel their relationship and discuss Garrigan's potential involvement with Theresa's children. At the conclusion of Dr. Ertz's testimony, the court briefly questioned him:

> THE COURT: So, Dr. Ertz, was that your understanding of what Mr. Garrigan was convicted of? Of lifting up the blouse -- shirt of his daughter and looking at her breasts?
>
> DR. ERTZ: My information was that it was more than that.
>
> THE COURT: And was it simply a one-time thing?
>
> DR. ERTZ: It was not simply a one-time thing.

[¶7.] In its oral findings of fact, the court stated its concern for the safety of the children. The court noted that Garrigan had been released from prison less than a year for his sexual contact conviction and was still on parole. The court also indicated its belief that Garrigan downplayed the seriousness of his prior offense to Theresa. The court explained that it accepted the testimony of Daniel, Bosworth, and the statements of the children to be true since Garrigan chose not to testify. Based upon these findings, the court determined that it was not in the children's best interests to have contact with Garrigan, and that Garrigan had pursued a knowing and willful course of conduct by bringing himself into the children's home. The court then explained:

> The [c]ourt is going to enter the protection order for six months. *It is the expectation of the [c]ourt that this matter could also and*

-3-

*should also be resolved in the custody side of it. And I anticipate that six months is sufficient time for this to be resolved.* Obviously, we can always have a motion to modify. Mr. Garrigan may not be within 100 yards of the children, may have no contact directly or indirectly with the children.

(Emphasis added.) The court signed a six-month protection order that expired on February 23, 2019. Garrigan appealed and filed his appeal brief on November 26, 2018. Daniel appears pro se on appeal and has not filed an appeal brief.[2]

[¶8.] The Odyssey© electronic court filing record in the divorce case between Daniel and Theresa shows that just before the protection order expired, they entered into a stipulated order, on February 11, 2019. The order required Theresa to prevent Garrigan's contact with the children or from visiting or remaining at Theresa's home when the children are present. The order also required Theresa to ensure Garrigan does not participate in any electronic communication with the children.

[¶9.] Garrigan raises two issues in this appeal:

1. Whether the appeal should be dismissed as moot because the protection order has expired.

2. Whether the circuit court's protection order was supported by the record and within its discretion.

### Analysis & Decision

*1. Whether the appeal should be dismissed as moot because the protection order has expired.*

---

2. The "failure of the appellee to file a brief does not automatically translate to victory for the appellant." *Brummer v. Stokebrand*, 1999 S.D. 137, ¶ 6, 601 N.W.2d 619, 621 (quoting *Hawkins v. Peterson*, 474 N.W.2d 90, 92 (S.D. 1991)). We have stated that the "[a]ppellant still has the burden of showing that the findings of fact are clearly erroneous or that the conclusions of law are incorrect[.]" *Id.* Here, before addressing the merits, Garrigan must initially show that the expired protection order is not moot.

[¶10.]     We have stated,

> [t]his Court will only decide "actual controversies affecting people's rights . . . . Accordingly, an appeal will be dismissed as moot where, before the appellate decision, there has been a change of circumstances or the occurrence of an event by which the actual controversy ceases and it becomes impossible for the appellate court to grant effectual relief."

*Sullivan v. Sullivan*, 2009 S.D. 27, ¶ 11, 764 N.W.2d 895, 899 (quoting *In re Woodruff*, 1997 S.D. 95, ¶ 10, 567 N.W.2d 226, 228). Garrigan acknowledges that the expiration of the protection order presents a potential bar to appellate review. Nonetheless, he argues that the Court should review the expired order under one of the exceptions to the mootness doctrine. *See e.g., Larson v. Krebs*, 2017 S.D. 39, ¶ 14, 898 N.W.2d 10, 16 (explaining the "capable of repetition, yet evading review" exception).

[¶11.]     Garrigan initially argues we should review the expired order because the matter is "capable of repetition, yet evading review." *Id.* We may apply this exception when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Skjonsberg v. Menard, Inc.*, 2019 S.D. 6, ¶ 15, 922 N.W.2d 784, 789 (quoting *Larson*, 2017 S.D. 39, ¶ 14, 898 N.W.2d at 16). Even if we assume the first prong is satisfied, the stipulated order in the divorce between Daniel and Theresa diminishes the likelihood that Daniel will file a future protection order against Garrigan. Thus, we decline to review the order under this exception.

[¶12.]     Garrigan also argues that we should review the order as a matter of public importance. This exception is a variation on the first exception, but

considers both the public importance of the issue and the likelihood of repetition.[3]

We have stated that we "possess discretion to 'determine a moot question of public

importance if we feel that the value of its determination as a precedent is sufficient

to overcome the rule against considering moot questions.'" *Larson*, 2017 S.D. 39,

¶ 16, 898 N.W.2d at 16-17 (quoting *Cummings v. Mickelson*, 495 N.W.2d 493, 496

(S.D. 1993)).  In exercising this discretion, we will consider the "general public

importance, probable future recurrence, and probable future mootness." *Larson*,

2017 S.D. 39, ¶ 16, 898 N.W.2d at 17 (quoting *Sedlacek v. S.D. Teener Baseball

Program*, 437 N.W.2d 866, 868 (S.D. 1989)).  Garrigan suggests we apply this

exception because appellate review of short-term protection orders appealed by an

aggrieved party is a matter of public importance.  Garrigan cites *Seney v. Morhy*,

3 N.E.3d 577 (Mass. 2014), where that court denied a request to dismiss the appeal

of an expired protection order, stating "[i]n such circumstances, we do not hesitate

to reach the merits of cases that no longer involve a live dispute so as to further the

public interest."[4]  *Id.* at 581 (quoting *Anime v. Commonwealth*, 611 N.E.2d 204

---

3.    In *Woodruff*, we stated, "[The capable of repetition, yet evading review exception] is also known as the public interest exception." 1997 S.D. 95, ¶ 15, 567 N.W.2d 226, 229.  In *Larson,* we revisited this concept and indicated in dicta that the exceptions may be separate, but "we decline[d] to address the relationship between the exceptions." 2017 S.D. 39, ¶ 14 n.3, 898 N.W.2d 10, 16 n.3.  Since *Larson,* our decision in *Skjonsberg*, 2019 S.D. 6, ¶ 15 n.5, 922 N.W.2d at 789 n.5, discussed the "capable of repetition, but evading review" exception, while *State v. Bolton*, 2017 S.D. 94, ¶ 5, 906 N.W.2d 365, 366 discussed the "public interest exception," but neither addressed whether these exceptions are distinct.  In discussing the public interest exception here, we assume these are separate exceptions.

4.    *Seney* did not apply the public importance exception, but rather reviewed an expired protection order for harassment under the collateral consequences

(continued . . .)

(1993)).  Under Garrigan's view, appellate review of a short-term protection order or other restraining order that a party claims was erroneously entered may serve some public interest.  But the same could be said of every expired order that a party claims was erroneously entered.  Applying the exception this broadly would effectively eviscerate our mootness rule.  Given the private nature of the dispute between these parties, and the apparent resolution of the issue of Garrigan's contact with the children, we decline to review the case under the public importance exception.

[¶13.]        Garrigan also argues the expired protection order may be reviewed under the collateral consequences exception to the mootness doctrine.  In *Woodruff*, we considered the applicability of the collateral consequences exception to an expired involuntary mental health commitment order.  1997 S.D. 95, ¶ 14, 567 N.W.2d at 229.  *Woodruff* noted that a determination that a person lacks mental competency may have an effect on a person's "voting rights, restrictions on the right to serve on a federal jury, restrictions on the ability to obtain a license to drive, limitations on gun permit access, a rebuttable presumption of continued incompetency, the right to dispose of property, and the right to execute contracts[.]" 1997 S.D. 95, ¶ 12, 567 N.W.2d at 228.  However, in the context of an involuntary mental commitment, the Court noted that "[Woodruff's] basic rights remain

---

(. . . continued)
     exception.  Because of a Massachusetts statute providing for expunging the
     public record of any protection order vacated on appeal, the court stated that
     "[t]he defendant here still has a stake in the outcome of the appeal, including
     removing any stigma from her name through the destruction of the order."
     *Seney*, 3 N.E.3d at 582.

unaffected by their temporary [involuntary mental health] commitment" under SDCL 27A-12-1.2. *Id. Woodruff* rejected the application of the collateral consequences exception to the expired order, determining that the potential consequences, including possible stigma arising from the order, did not "rise to the level of collateral *legal* consequences[.]" *Id.* ¶ 14, 567 N.W.2d at 229 (quoting *Godwin v. State,* 593 So.2d 211, 214 (Fla. 1992)) (emphasis added).

[¶14.]       Similarly, Garrigan has failed to show any collateral legal consequences arising from the expired protection order. Initially, he cites the possible impact the protection order could have on his parole status and compliance with the terms of his parole agreement. However, Garrigan fails to make any showing that the protection order had an actual impact on his parole while it was in effect, or that the expired order will impact his future parole status. Garrigan also points to the stigma arising from a prior judicial finding that he has stalked children and the requirement that a protection order be provided to law enforcement under SDCL 22-19A-15.[5] While SDCL 22-19A-15 may create a "record," Garrigan has failed to show that this "record" of the expired protection order will have any collateral legal consequence.

---

5.       SDCL 22-19A-15 provides,

> The petitioner may deliver an order for protection granted pursuant to §§ 22-19A-8 to 22-19A-16, inclusive, within twenty-four hours to the local law enforcement agency having jurisdiction over the residence of the petitioner. Each appropriate law enforcement agency shall make available to other law enforcement officers information as to the existence and status of any order for protection issued pursuant to §§ 22-19A-8 to 22-19A-16, inclusive.

[¶15.]    Garrigan cites cases from other jurisdictions applying the collateral consequences exception to expired protection orders.  However, all except one of these cases involve an expired *domestic violence* protection order.[6]  *See Seney*, 3 N.E.3d at 581; *but see Cardoso v. Soldo*, 277 P.3d 811, 815 (Az. Ct. App. 2012); *Piper v. Layman*, 726 A.2d 887, 889--91 (Md. Ct. Spec. App. 1999); *Chretien v. Chretien*,170 A.3d 260, 262-63 (Me. 2017); *E.C.O. v. Compton*, 984 N.E.2d 787, 791 n.12 (Mass. 2013); *Hamilton ex rel. Lethem v. Lethem*, 193 P.3d 839, 843-48 (Haw. 2008); *Putman v. Kennedy*, 900 A.2d 1256, 1261-65 (Conn. 2006).  In applying the collateral consequences exception to expired domestic violence protection orders, these courts have required that there be "a reasonable possibility that prejudicial collateral consequences will occur," and "the litigant must establish these consequences by more than mere conjecture."  *Putman*, 900 A.2d at 1261.  These courts have noted particular collateral consequences may arise from an expired *domestic violence* protection order.  *See, e.g.*, *Hamilton ex rel. Lethem*, 193 P.3d at 846 (explaining "legal ramifications flowing from" a finding of domestic violence may include future bail proceedings and child custody determinations.).

[¶16.]    Here, because Garrigan only hypothesizes about collateral consequences arising from this stalking protection order, we deny his request to apply the exception to this order.  The protection order expired on February 19, 2019.  The exceptions to mootness argued by Garrigan are applied at the Court's

_____

6.    Garrigan also cites one recent decision holding that the "possibility of future collateral consequences" was insufficient to preserve the appeal of an expired domestic violence protection order.  *Cyran v. Cyran*, 97 N.E.3d 487, 490 (Ohio 2018).

discretion.  On this record, we are not convinced that any of the exceptions should be applied to review the expired order appealed by Garrigan.  Therefore, we dismiss the case as moot.

[¶17.]        GILBERTSON, Chief Justice, and SALTER, Justice, and WILBUR, Retired Justice, concur.