2004 SD 22

**Brenda Michelle OSGOOD, n/k/a Brenda Michelle Kron, Plaintiff and Appellant,**

v.

**William Robert OSGOOD, II., Defendant and Appellee.**

No. 22884.

Supreme Court of South Dakota.

Considered on Briefs Jan. 12, 2004.

Decided Feb. 18, 2004.

Angela Colbath, Rapid City, South Dakota, Attorneys for plaintiff and appellant.

George J. Nelson, Rapid City, South Dakota, Attorney for defendant and appellee.

SABERS, Justice.

[¶ 1.]  This is an appeal from a modification to paternal grandparent's (Grandparents) visitation.  The trial court (1) upheld the original divorce court's grant of visitation with minor modifications;  and (2) granted attorney's fees to Grandparents.  Mother appeals, we affirm.

## FACTS

[¶ 2.]  Mother Brenda Kron and father William Osgood were divorced on May 17, 1995.  The child born to the marriage was

approximately two years old at the time of the divorce. The parents were awarded joint legal custody with Mother as the primary custodian and William having visitation. Within a year, Mother filed a motion for an order to show cause, raising concerns about the child's care while he was with William. At the time, William was living with Grandparents. Grandparents and William responded by affidavit, requesting that the court grant Grandparents visitation rights. After a hearing, the court modified visitation to address Mother's concerns, but did not address grandparent visitation. Shortly thereafter, William went to prison.

[¶ 3.] While he was in prison, William filed a motion for an order to show cause why Grandparents could not have his visitation rights while he was incarcerated. Prior to the hearing, Mother agreed to visitation by way of affidavit which stated in part:

> I[] offer visitation to the paternal grandparents on Saturday at 10:00 a.m. to Sunday at 10:00 a.m. the second and fourth weekends of each month. I will deliver and pick up my son for such visitation.

Judge Fitzgerald entered an order on December 4, 1995 granting Grandparents visitation. In awarding the Grandparents visitation, Judge Fitzgerald considered Mother's offer and ordered visitation in accordance with the schedule she requested and ordered that Grandparents were entitled to holiday visitation "to the extent possible as agreed between the parties."

[¶ 4.] William was released from prison in 1999 and he and Mother entered into a stipulation for visitation. Grandparent visitation was not addressed in that stipulation. However, the order from Judge Fitzgerald was still in force.

[¶ 5.] In summer 2001, William was sentenced to life in prison. During his trial and after his sentencing, it appears that Mother denied Grandparents visitation. On August 16, 2002, Grandparents brought a motion for an order to show cause seeking enforcement of the order and attorney fees as sanctions. Mother filed no responsive documents to the order or motion. After hearing arguments, Judge Delaney held that the December 1995 order was "fully valid and enforceable" and "entitled to full compliance and considered so unless or until formally modified by the court." He ordered that "neither [Mother] nor anyone allied with her shall violate the terms of the order." The issue of attorney fees was held in abeyance pending proof regarding the income and the financial status of the parties.

[¶ 6.] Approximately one month later, Mother's husband filed for adoption of the child. The adoption was granted, but only after Judge Kern made it clear to the parties that the order for visitation was not to be trifled with and that it was in the best interest of the child that Grandparents be allowed visitation.[1] The court stat-

---

1. At the adoption hearing, the court said:
   [T]he court is prepared to allow the adoption to go forward. Understand however that this court believes that based on the file before it and this court's observations of the grandparents and you and the stepfather, that grandparent visitation is in the best interests of this child.
   This court also has concerns about the language that both of you [Mother and Adoptive Father] have used during the hearing about court orders. Court orders are not something you decide you might follow in the future if you agree with them a hundred per cent ... [T]hey're not mere suggestions, they're enforceable. []
   [] It's easy to rationalize, well, the arrangement with [adoptive] dad takes priority over everything else and just unilaterally [] make the decision and deny grandparents this week. You don't have that right because that puts you in violation of a valid court

ed in part that it had informed adoptive father and Mother that it had the option of denying the petition for adoption, but chose not to exercise that option based on their agreement that they would do nothing to impede grandparent visitation. The court acknowledged the original visitation order and the fact that the order was "reaffirmed and enforced at a hearing held before Hon. John J. Delaney on Aug 26, 2002." The court then "expressly [found] that the best interests of [child] are that he continue to have regular visitation with his paternal grandparents and that the court ordered visitation shall continue." Finally, the court informed Mother and adoptive father of the penalties for disregarding a valid court order. The adoption order incorporated all of these findings and ordered that the Grandparents' visitation rights survived adoption and were entitled to full faith and credit.

[¶ 7.] Thereafter, the parties attempted to reach a visitation schedule by stipulation, but Mother remained unwilling to sign any of the seven stipulations drafted and forwarded by Grandparents. Mother concedes that she "briefly" denied visitation in 2002, but after consultation with counsel, reinstated visitation. After Mother rejected the seventh proposed stipulation, Grandparents filed another motion for relief and request for attorney's fees.

[¶ 8.] At the January 8, 2003 hearing, Judge Delaney reiterated that the original visitation order was valid, set up a specific visitation schedule for the parties, and awarded Grandparents $1,300 in attorney fees. Mother appeals and we affirm.

---

order which will lead to a finding that you're in contempt.
The court then inquired, "Ms. Kron, are you willing to support [the] prior order allowing the grandparent visitation?" Mother responded, "yes." The court clarified:

## STANDARD OF REVIEW

[¶ 9.] The standard of review for modification of visitation rights is abuse of discretion. *Currey v. Currey,* 2002 SD 98, ¶ 8, 650 N.W.2d 273, 276 (additional citations omitted). The award of attorney fees is also reviewed under an abuse of discretion standard. *Kappenman v. Kappenman,* 522 N.W.2d 199, 202 (S.D. 1994) (citing *Garnos v. Garnos,* 376 N.W.2d 571 (S.D.1985)).

[¶ 10.] **1. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION WITH RESPECT TO GRANDPARENT VISITATION.**

[¶ 11.] Mother asserts that the trial court abused its discretion in "granting Grandparents visitation rights." Citing SDCL 25–4–52, she argues that the trial court abused its discretion because "the record is completely void of any evidence offered by the grandparents concerning the effect visitation has on the parent-child relationship." SDCL 25–4–52 provides:

> The circuit court may grant grandparents reasonable rights of visitation with their grandchild, with or without petition by the grandparents, if the visitation is in the best interests of the grandchild and:
>
> (1) If the visitation will not significantly interfere with the parent-child relationship; or
>
> (2) If the parent or custodian of the grandchild has denied or prevented the grandparent reasonable opportunity to visit the grandchild.
>
> The circuit court shall issue any orders necessary to enforce or to protect visita-

---

[] You're telling this court that you're not going to unilaterally decide to pick and choose when you're going to obey the order? That you will obey the order that's ultimately arranged?
Mother again responded, "yes."

tion rights granted pursuant to this section.

Mother concedes that it is in the child's best interest to have visitation with Grandparents, but argues that Grandparents had a burden to prove that the visitation would not "significantly interfere with the parent-child relationship." Mother asserts that the adoptive father is an over-the-road truck driver and spends considerable time away from the family. She argued at the hearing that since father was often away, she would like the parties to be able to swap visitation weekends should father come home on a weekend when the child would normally be at Grandparents' home. Other than this proposal, there was no evidence entered by either party regarding the effect of visitation on the parent-child relationship. Therefore, Mother argues, "the trial court abused its discretion in ordering the visitation schedule without requiring the grandparents to show by clear and convincing evidence that the ordered visitation does not interfere with the parent-child relationship."

■ [¶ 12.] Mother misapprehends the nature and the evidentiary requirements of this proceeding. The trial court was not faced with a request by Grandparents to *grant* visitation rights. Grandparents already *had* visitation rights pursuant to the 1995 order which was reaffirmed by two judges. The Due Process Clause prohibits government interference with the interest of parents in the care, custody and control of their children. *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 2059–60, 147 L.Ed.2d 49, 56 (2000). However, in this case, parents' due process rights are not

impeded by government interference. As in *Currey*, the original visitation was granted based on Mother's agreement and proposed visitation schedule, which was memorialized by Judge Fitzgerald's order. *Currey*, 2002 SD 98, 650 N.W.2d 273. This hearing was held because of the parties' inability to agree on scheduling. Frustrated by months of drafting fruitless stipulations, and attorney fees approaching $2,000.00, Grandparents noticed a hearing requesting that the court adopt the terms of the seventh proposed stipulation drafted by Grandparents and rejected by Mother. The question before this Court is not whether the trial court erred in granting visitation, but whether the trial court erred in scheduling visitation under a valid, preexisting visitation order.

[¶ 13.] The trial court held that the visitation schedule ordered by Judge Fitzgerald should be upheld, with minor modifications. Those modifications dealt primarily with issues of convenience for the parties and points of clarification to minimize disputes.[2] The only provision that Mother specifically objects to is subsection (c) of the order, which provided in part:

> The adoptive father [] has responsibility to arrange his own schedule to accommodate the grandparent visitation if he wishes to have it not conflict with the child visitation schedule.

At the hearing, Mother's counsel suggested that part of the order be that the parties agree to "working together ... [and] consider swapping weekends so the child [] could spend a weekend with dad [when he is home on a visitation weekend]

**2.** Although Mother does not argue it on appeal, we note that in her responsive brief below, she suggested a visitation schedule that permitted Grandparents one overnight visit each month, and either Memorial Day or Labor Day. This proposal provided Grandparents with half of the visitation granted by the original order. There was no evidence provided by Mother that such a modification should be made and the judge indicated that he saw no basis for granting her request which he found "markedly different" from the original order.

and not lose any time with the grandparents." The trial court responded:

> [T]hat's an imminently reasonable request assuming that there is—*and I see no possibility on this record that these people can agree today is Wednesday, much less agree to swap visitation* because each party rightfully or wrongfully is inherently suspicious of the actions, moves and motives of the others, some of which may be justified. [] I'm reading a cold record and I'm picking up just from my dealings in September and reading transcripts and that's a little bit cold, but *the smell of this file is awful, and a significant part of that smell is on [Mother's] doorstep.*

(Emphasis supplied.) The trial court went on to note:

> Now, I agree, that if we have problems with that kind of an occupation, we will need to make some steps to accommodate that. On the other hand, if he is to be a father, then he needs to accommodate being a parent, and raising the child and being a father and being a mother to the child takes priority, at least in this court's opinion, of all other things, okay?

Finally, in the context of its holding on subsection (c), the court stated:

> I have no idea how far in advance the new father knows what his schedule is, but it's going to be up to him to arrange it because if there has been one visitation in the month and all of the sudden he's home for the fourth and last weekend, he will not—the visitation will go forward. *There will be two [visitations] each and every month.*

The court did consider Mother's suggestion and ultimately left it to the adoptive father to attempt to come to a reasonable solution should the circumstance arise. Given Mother's history of intransigence regarding visitation, and the history of de-

nying Grandparents visitation, there is no showing that the court abused its discretion in not specifically ordering that Grandparents' visitation rights yield whenever the adoptive father is home for the weekend.

[¶ 14.] Mother has failed to show that the trial court abused its discretion and the trial courts modification of the visitation schedule is affirmed.

[¶ 15.] **2. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING GRANDPARENTS ATTORNEY FEES.**

[¶ 16.] The trial court awarded Grandparents attorney fees in the amount of $1,300.00 based on SDCL 15–17–38. In determining whether to award fees under SDCL 15–17–38, each case rests upon its own facts and a decision is within the courts discretion. This Court can consider the totality of the circumstances in reviewing such an award. *Kappenman,* 522 N.W.2d at 202 (additional citations omitted). Whether to award fees is a determination within the sound discretion of the trial court. *Id.* We will not overturn absent an abuse of that discretion. The term, abuse of discretion refers to a discretion exercised to an end or purpose, not justified by, and clearly against, reason and evidence. *Id.* (quoting *Hrachovec v. Kaarup,* 516 N.W.2d 309 (S.D.1994) (additional quotation omitted)).

[¶ 17.] In awarding the attorney fees, the court noted:

> I find a sufficient basis in this matter to award attorney fees. I find the preparation of a large number of stipulations purportedly agreed to, and quite a number of them in response to specific requests for Ms. Kron, and none of them returned signed. [Grandparents have] incurred far more than the thousand dollars. It's just in drafting those

agreements nothing else. [] That award is more of a warning than anything else. This is going to settle and it's going to go away or it's going to get ugly. [] [Grandparent's] point is well taken. It's the same point [they] made in September, [] and as far as I can tell, we have gone four and a half months and we have gone nowhere.

After hearing argument from counsel for Mother, the court stated:

This came in front of me in September. Visitation had been denied for 2002 without basis. It had been reinstated, but [Mother] was very clearly in the wrong. No attorney fees were awarded at that time. Judge Fitzgerald's order was [] back in place. There was an adoption proceeding that certainly had an appearance of an attempt to either end or reduce significantly visitation to the grandparents, and to whatever extent I can understand valid reasons in that, there is plenty of room for malice and deliberate intent that's in disregard of the child. [] Frankly, that award could have been made in September. I wanted to see what happened and go forward here and [] it is clear. [] Your requests are markedly different from Judge Fitzgerald's order and I see no basis for doing that. [] It looks to me like we were going backwards, and for those reasons, I find that the actions of the plaintiff have been contrary to the order, the spirit of the order, and where I perceive things were going in September, they didn't get better, visitation continued, but the hostility between the parties didn't get any better, and I can't imagine that this child is any more comfortable.

[¶ 18.] Mother argues first that it is unclear what fees Grandparents were seeking. However, in their motion for fees, Grandparents requested $1,500.00 in fees, sales tax of $90 and costs of $400 for a total of $1,900.00. Attached to the motion was the attorney's itemized bill.

[¶ 19.] Mother asserts next that there is no evidence in the record to support the finding that there were several stipulations offered by Grandparents and rejected by Mother. The attorney's itemized bill indicates at least five drafts of stipulations, and at the adoption hearing, Mother agreed on cross-examination that she had already rejected several drafts of the stipulation, even after Grandparents made her suggested changes. Mother cannot claim a better version of the facts than she conceded under oath.

[¶ 20.] Finally, Mother asserts that the trial court was required to take into account the parties' relative incomes, fixed or liquid assets, and whether either party's action caused an unnecessary increase in the amount of time spent on the case. We agree that these are all valid considerations by the court in making a determination whether to award fees. *See e.g. Whalen v. Whalen*, 490 N.W.2d 276 (S.D.1992). We note, however, that Grandparents did provide a financial statement for the court to consider. If Mother desired to have her finances considered, she should have submitted her own. Furthermore, as noted above, the court did make a finding at the hearing, which was incorporated into the findings of fact and conclusions of law, that Mother's actions with regard to the stipulations caused an unnecessary increase in the amount of time and money spent on the action.

[¶ 21.] We agree with the two trial courts in this case that court orders are not "invitations, requests or even demands; they are mandatory." *Storm v. Durr* 2003 SD 6, 17, 657 N.W.2d 34, 38 (quoting *Schwartz v. Palachuk*, 1999 SD 100, 23, 597 N.W.2d 442, 447). Mother has treated Grandparents court-ordered visitation as a

suggestion. She should not be heard to complain that the sanction for disregarding the order is too severe. This is particularly so in this case, where three circuit courts have found, and Mother concedes, that it is in the best interest of the child that he be allowed visitation with his grandparents and Mother has repeatedly resisted.

[¶ 22.] Mother has not shown that the trial court abused its discretion in awarding attorney fees to Grandparents. Affirmed.

[¶ 23.] GILBERTSON, Chief Justice, and KONENKAMP, MEIERHENRY, and ZINTER, Justices, concur.