#30644-a-MES
**2024 S.D. 79**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

NICHOLAS E. WASILK,                          Plaintiff and Appellant,

    v.

HEATHER L. WASILK,                          Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE THIRD JUDICIAL CIRCUIT
CODINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE ROBERT L. SPEARS
Judge

* * * *

THOMAS L. SANNES of
Delaney, Nielsen & Sannes, P.C.
Webster, South Dakota                          Attorneys for plaintiff and
                                            appellant.


AMANDA M. THOLE of
Austin, Strait, Benson
   Thole & Koehn, LLP
Watertown, South Dakota                          Attorneys for defendant and
                                            appellee.

* * * *

CONSIDERED ON BRIEFS
AUGUST 27, 2024
OPINION FILED **12/11/24**

#30644

SALTER, Justice

[¶1.]    Nicholas and Heather Wasilk are former spouses who share joint legal custody of their three minor children.  Heather sought to take the children on vacation to Mexico and requested Nicholas's consent on the applications for their passports.  Nicholas refused, and Heather filed a motion seeking an order directing Nicholas's participation in the passport application process.  The circuit court granted Heather's motion.  Nicholas now appeals, arguing the circuit court lacked the authority to resolve Heather's motion, failed to properly weigh the best interests of the children, and impermissibly infringed on his fundamental right as a parent in the care of his children.  We affirm.

## Factual and Procedural Background

[¶2.]    Nicholas and Heather were married in 2015 and have three children together, ranging in age from six to ten years old.  Heather also has two older, teenage children from a previous marriage.  Since their divorce, Heather has resided in Watertown, and Nicholas lives in Waubay.

[¶3.]    Nicholas commenced a divorce action in 2019.  During the pendency of the divorce proceedings, the parties stipulated to a custody arrangement under which Heather had primary physical custody of the children subject to Nicholas's visitation rights.  The circuit court adopted this stipulation in an interim order.

[¶4.]    The circuit court's September 2020 judgment and divorce decree incorporated the parties' agreement regarding marital property, but the decree did not address child custody.  In March 2021, the parties executed a "Custody

-1-

Settlement Agreement" in which they agreed to share joint legal custody with Heather having primary physical custody subject to Nicholas's parenting time.[1]

[¶5.] In March 2023, however, Nicholas sought to modify the custody agreement with respect to travel. He alleged that in two previous instances he received either "last minute" notice or no notice at all before Heather took the children out of the state for vacation trips. Nicholas requested an order stating that the children cannot leave the state unless the other parent receives two weeks' advance notice and grants permission. Of particular significance to this appeal, Nicholas also proposed "[t]hat neither parent shall remove the parties' children from the Continental United States."

[¶6.] The parties ultimately agreed to modify the existing custody order in light of Nicholas's motion. In a December 2023 order, the circuit court adopted the stipulation which contained the following provision relating to foreign travel:

> That if a party wishes to transport the children outside of the Continental United States, Alaska or Hawaii, they will give 45 days written notice to the other parent. . . . *If the other parent objects within 30 days, the parties will obtain an immediate hearing before the Court to make a determination as to whether or not the trip will take place.*

(Emphasis added.)

[¶7.] In approximately October 2023, while Nicholas's motion to modify the custody order was pending, Heather began planning a spring break vacation to an all-inclusive resort in Nuevo Vallarta, Mexico, for all five of her children. She

---

1. Though Heather and Nicholas have demonstrated the capacity to reach agreement concerning the custody of their children, they have also frequently litigated these issues.

intended the March 2024 trip to be a Christmas present as well as a high school graduation gift for her oldest child. Heather notified Nicholas of her plans and asked him to execute the passport applications for their children in October 2023. After Nicholas refused, Heather filed a motion "for an order directing [Nicholas] to sign the passport application for the minor children to obtain a U.S. passport[.]" Nicholas submitted an objection, citing, among other things, his general safety concerns associated with the children traveling outside of the United States to Mexico.

[¶8.] The circuit court conducted a January 2024 hearing at which both Heather and Nicholas provided testimony. Nicholas explained that one of their children had a severe peanut allergy and asthma. Nicholas was concerned about the availability of adequate healthcare and the lack of "comprehensive food vetting" at the resort.

[¶9.] Heather is a registered nurse and testified that she is well-equipped to treat the child's conditions. She related that the child's most recent allergic reaction to peanut exposure was over three years ago and resulted in an emergency room visit. Although the emergency room medication was not effective, Heather explained that she arrived with the appropriate medication, administered it, and neutralized the allergic reaction. Heather also testified that the child has not had an asthma attack requiring medical attention for nine years. She stated that she always travels with two EpiPens, oral steroids, a steroid inhaler, and an Albuterol inhaler in the event that the child would experience any symptoms.

[¶10.]     Nicholas called a non-party witness who recounted an experience unrelated to this case involving her husband's medical emergency in Puerto Vallarta in 2015. The witness explained the challenges related to obtaining appropriate care for her husband and testified that after leaving their resort, she needed an armed guard to escort her to and from the hospital.

[¶11.]     Nicholas also expressed concerns regarding a travel advisory issued by the United States Department of State for travel within Mexico.[2] However, Heather explained that neither she nor the children would be leaving the resort and that the resort provides a shuttle service. She stated that she previously stayed at a similar resort in nearby Puerto Vallarta and noted that she never felt unsafe.

[¶12.]     Heather also testified that their three children had already found out about her plans for a vacation to Mexico and were excited to go. She underscored how much the children love traveling.

[¶13.]     On January 30, 2024, the circuit court issued a written decision granting Heather's motion and ordering "Nicholas to fully cooperate with the passport application process regarding his three children." The court provided detailed findings of fact about the risks to tourists in the area and acknowledged

---

2.     The State Department issues travel advisories on a scale of Level One (exercise normal precaution) to Level Four (do not travel) and, in Mexico, it does so on a state-by-state basis. At the hearing, Nicholas's counsel claimed that the resort was located in the Mexican State of Durango, which is subject to a Level Three (reconsider travel) travel advisory, and the circuit court's decision was based on a Level Three advisory. In her appellate brief, Heather asserts she discovered after the hearing that the resort is actually located in the State of Nayarit, which is currently subject to a Level Two (exercise increased caution) travel advisory. The error is of no consequence on appeal because, given the court's decision, it would not have affected the result.

Nicholas's concerns regarding the travel advisories but found the advisories to be "cautionary[.]" Specifically, the court found that the "advisories have been in effect for nearly eight years and are routinely renewed each year." Further, the court noted that no specific examples had been provided of tourist kidnappings or violence towards tourists visiting resorts in the area.

[¶14.] The circuit court also made specific findings regarding the risks associated with the peanut allergy and asthma conditions of one of the children. The court determined that the child's asthma is "well controlled by medication[,]" noting the nine-year interval since the child's last asthma attack. And based upon her education and professional training as a nurse, the court further found "Heather is qualified to treat the medical needs of her children when required." The court found Heather's plan to notify the resort restaurants of the peanut allergy beforehand would mitigate possible risks, but, in the event of an allergic reaction, the court found "Heather [would] have the appropriate medication and knows how to treat it."

[¶15.] The circuit court found that the trip was in the best interest of the children because it "enable[d] them to experience a luxury resort and share that experience with all their siblings." Further, the court found that allowing all the children to go on the trip "may prevent jealousy . . . between siblings[.]" The court also sought to prevent possible "resentment and alienation regarding the parents if the three younger children are not allowed to go."

[¶16.] After an unsuccessful motion for reconsideration, Nicholas has appealed, challenging the circuit court's order on three grounds. First, he asserts

the court's decision was not in the best interests of the children. Next, he argues the court lacks the authority to fashion relief involving passport applications for minors. And lastly, Nicholas claims the court's order violates his fundamental right as a parent in the care of his children.[3]

## Analysis and Decision

### *Best Interests of the Children*

[¶17.] In family law proceedings, we often associate a judicial determination of a child's best interest with establishing or modifying the parents' custody or visitation rights. But a circuit court's authority to "give . . . direction for the custody, care, and education of the children," *see* SDCL 25-4-45, is broader and easily encompasses an individual determination regarding travel even though it does not, strictly speaking, implicate either custody or visitation. *See Gantner v. Gantner*, 246 P.2d 923, 929–30 (Cal. 1952) (holding that trial court must assess parent's request to take the parties' child on a vacation to Australia using best interests of the children standard); *Sparks v. Sparks*, 269 S.E.2d 847, 849 (W. Va. 1980) (holding that "absent a showing that the health or welfare of the children

---

3. The anticipated time for Heather's vacation passed shortly after Nicholas filed his notice of appeal, and it does not appear that Heather and the children traveled to Mexico. The parties have not addressed the topic of mootness, and we conclude it is unnecessary to do so on our own. The record does not support the inference that the trip would never occur if it did not happen in March 2024; the trip might well be rescheduled for another time. Additionally, the children are still without passports. Under the circumstances, we have no indication that the dispute between parties has ceased to be a live and justiciable controversy. *Compare Sullivan v. Sullivan*, 2009 S.D. 27, ¶ 13, 764 N.W.2d 895, 900 (determining father's appellate challenge to a decision allowing mother to travel to the Philippines with their children was moot because the travel had already occurred).

would be substantially impaired . . . the custodial parent is entitled to [travel out of the country with their minor children].").

[¶18.] Permeating our more-typical custody and visitation decisions is the unremitting principle that "our brightest beacon remains the best interests of the child" in all judicial decisions concerning a child's care. *Zepeda v. Zepeda*, 2001 S.D. 101, ¶ 13, 632 N.W.2d 48, 53; *see also Weber v. Weber*, 529 N.W.2d 190, 191 (S.D. 1995) (reviewing a visitation modification and stating that "[t]he primary focus is the best interest of the children"). Factual findings related to the best interest of the children are reviewed for clear error. *Moulton v. Moulton*, 2017 S.D. 73, ¶ 6, 904 N.W.2d 68, 71. Under this standard, we "will accept the circuit court's factual findings unless after a complete review of the record, the Court is left 'with a definite and firm conviction that a mistake has been made.'" *Id.* (quoting *Aguilar v. Aguilar*, 2016 S.D. 20, ¶ 9, 877 N.W.2d 333, 336).

[¶19.] But, how a circuit court effectuates a child's best interest into appropriate relief is a matter of broad judicial discretion. *See Osgood v. Osgood*, 2004 S.D. 22, ¶ 9, 676 N.W.2d 145, 148 (applying abuse of discretion standard in the context of a visitation order). "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable.'" *Flint v. Flint*, 2022 S.D. 27, ¶ 28, 974 N.W.2d 698, 703 (quoting *Evens v. Evens*, 2020 S.D. 62, ¶ 21, 951 N.W.2d 268, 277).

[¶20.] Here, the circuit court's factual findings concerning the best interests of the children were not clearly erroneous, and the court did not abuse its discretion

by ordering Nicholas to participate in the passport application process. The court considered the evidence presented by the parties and made detailed findings about the risks to tourists in the area, concerns associated with the child's medical conditions, and the consequences of allowing the travel or not.

[¶21.]     Regarding the risks associated with tourism to Mexico, the circuit court understood Nicholas's concerns based upon the State Department's travel advisory and experience related by his non-party witness. However, the court, acting in its fact-finding role, was ultimately persuaded by Heather's testimony that addressed these concerns, including Heather's explanation that the children would remain at the resort at all times during the trip with the only exception being a ten-minute shuttle between the resort and the airport. The court also noted the absence of any specific examples of security concerns or reported instances of tourists being kidnapped, robbed, assaulted, or threatened while vacationing at resorts in the area.

[¶22.]     The circuit court also carefully considered any risk posed by the travel for the child who has a severe peanut allergy and asthma. The court made several findings in this regard and accepted Heather's testimony that the child's asthma is "well controlled by medication" and that the peanut allergy was "under control[.]" The court determined "Heather [has] the appropriate medication and knows how to treat it" which the court found presented vastly different circumstances from those related by the non-party witness who sought emergency medical care for her husband while on vacation in Puerto Vallarta.

[¶23.] In addition to the health and safety concerns, the circuit court also considered the impact of its decision upon the children. The court found that the vacation would "enable [the children] to experience a luxury resort and share that experience with all their siblings." The court determined that authorizing the international travel would prevent possible jealousy and resentment among the children.

[¶24.] Nicholas claims that the circuit court "appear[ed] to prioritize the children's shared experiences and familial dynamics[,]" while ignoring the State Department's travel advisory, "the documented incidents of violent killings[,]" and the risks associated with the child's severe peanut allergy. As a result, he argues that the court "misinterpret[ed] [the] evidence" which he characterizes as an abuse of discretion. He urges "this Court [to] place extra emphasis on the general safety of the children."

[¶25.] But this argument misunderstands our role as a reviewing court.[4] We review the circuit court's decision under the deferential standards set out above; we do not reweigh the evidence. *See Hubbard v. City of Pierre*, 2010 S.D. 55, ¶ 27, 784 N.W.2d 499, 511 ("It is not our role on appeal to retry [the] case or substitute our judgment as to credibility and weight of the evidence."). And, in any event,

---

4. Nicholas acknowledges that the best interests of the children is a factual finding, but he seems to refer to the circuit court's assessment of the risk associated with Heather's proposed trip as a matter of discretion. Notably, he does not argue that the court abused its discretion when it effectuated its best interest finding by ordering him to cooperate in the passport application process. The argument he offers in this regard is a legal one—the court lacked authority to order his cooperation under South Dakota law because federal regulations require both parents' consent to a passport application for a child under 16 years old. *See infra* ¶¶ 26–31.

Nicholas's claim that the circuit court ignored his safety concerns is not supported by the record. The court expressly considered each argument he presented—the court simply reached a different conclusion than Nicholas would have preferred.

***The circuit court's authority and 22 C.F.R. § 51.28***

[¶26.] Nicholas next advances what appears to be a preemption argument— that the circuit court's order is "invalid as a matter of law" because it acted without legal authority. In support, he cites 22 C.F.R. § 51.28 (2024), the federal regulation governing passport applications for minors and asks us to "recognize[] the legal framework established by federal law and preclude[] the trial court from overstepping its bounds[.]" In our view, however, Nicholas's argument is unsustainable.

[¶27.] While passports typically require consent from both parents, the provisions of 22 C.F.R. § 51.28(c)(2) (2024) contemplate a role for state courts in certain cases by stating: "An order from a court of competent jurisdiction providing for joint legal custody . . . will be interpreted as requiring the permission of both parents *or the court*, as appropriate." (Emphasis added.) Further, "[t]he Department [of State] will consider a court of competent jurisdiction to be a U.S. state . . . court located in the minor's home state or place of habitual residence." 22 C.F.R. § 51.28(c)(4) (2024).

[¶28.] Here, the circuit court was unquestionably a court of competent jurisdiction, and the parties' modified agreement, which Nicholas sought, anticipates the potential that one parent will object to the other's request to travel outside of the country with the children. In that event, the agreement provides that

"the parties will obtain an immediate hearing before the [circuit court] to make a determination whether or not the trip will take place."

[¶29.] Under the circumstances, it appears that the parties' custody agreement fits within the text of 22 C.F.R. § 51.28(c)(2) (2024) which would either require the consent of both parties "or the court" for a minor's passport application. Here, of course, the circuit court did not directly authorize the passport applications for the parties' children, but, instead, ordered Nicholas to cooperate in the application process. We do not see that distinction as consequential to the question of authority Nicholas raises here which is premised upon an incorrect view that federal regulations contemplate no state court role for passport applications involving minors.

[¶30.] Indeed, Nicholas's argument that he cannot be "forced" to consent is simply an extension of his broader assertion that his consent is an indispensable requirement to a passport application for the children under federal law. He cites as support the Georgia Court of Appeals decision in *Ansell v. Ansell*, 759 S.E.2d 916 (Ga. Ct. App. 2014). However, we do not view *Ansell* as persuasive here, most notably because the court's reference to federal authority focused its discussion on 22 C.F.R. § 51.28(a)(3)(ii)(E) [now § 51.28(a)(3)(ii)(D)] and not § 51.28(c)(2), which we cite above.

[¶31.] But beyond this, we perceive the state-versus-federal allocation of authority topic differently than Nicholas, and perhaps the *Ansell* court. Read as a whole, 28 C.F.R. § 51.28 (2024) does not purport to supplant state court authority; it

seeks to *recognize* it where, as here, a custody order makes clear that a circuit court may act to authorize a minor's passport application.

***Fundamental Rights***

[¶32.]     Finally, Nicholas asserts that the circuit court's order infringes on his fundamental right as a parent, as recognized by the United States Supreme Court in *Troxel v. Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000).  In *Troxel*, the Supreme Court held that a Washington visitation statute as applied was unconstitutional because it failed to accord proper weight to the decision of a fit parent regarding visitation rights for grandparents.  530 U.S. at 67–73, 120 S. Ct. at 2061–64.  In doing so, the Court recognized a "fundamental right of parents to make decisions concerning the care, custody, and control of their children" and "a presumption that fit parents act in the best interests of their children." *Id.* at 66, 68.  This presumption, codified in SDCL 25-5-29, establishes primacy for a parent's rights over non-parent third parties.

[¶33.]     Here, however, Nicholas asserts this fundamental right against Heather, the mother of the children, who, like him, appears to be capable of acting in the children's best interests.  Accordingly, *Troxel's* presumption in favor of a fit parent's determination simply does not apply, as courts across the country have universally recognized. *See e.g.*, *Vaughn v. Vaughn*, 56 So. 3d 1283, 1288 (Miss. Ct. App. 2011) (noting that "numerous courts . . . have found *Troxel* does not apply to custody disputes between natural parents"); *Enrique M. v. Angelina V.*, 94 Cal. Rptr. 3d 883, 889 (Cal. Ct. App. 4th 2009) (holding that "*Troxel* . . . does not compel courts to apply a substantive due process analysis in resolving custody or custody

related disputes *between parents*"); *In re R.A.*, 891 A.2d 564, 576 (N.H. 2005) (noting that "strict scrutiny need not be applied [when] balancing the rights of two fit parents, both of whom have the same constitutional right to custody of their children"); *In re Parentage of L.B.*, 122 P.3d 161, 178 (Wash. 2005) ("No case has ever applied a strict scrutiny analysis in cases weighing the competing interest of *two parents*. Rather, in Washington, courts attempt to discern the best interests of the child."); *Marriage of Arnold v. Arnold*, 679 N.W.2d 296, 299 (Wis. 2004) (distinguishing *Troxel* and rejecting a parent's substantive due process argument raised against the other parent); *McDermott v. Dougherty*, 869 A.2d 751, 771, 808 (Md. 2005) (explaining that "[t]he best interests of the child standard is, axiomatically, of a different nature than a parent's fundamental constitutional right[,]" and that "the most important application of the [best interests] standard[] is in disputes between fit natural parents [who share] equal constitutional rights to parent"); *accord* Margaret F. Brinig, *Does Parental Autonomy Require Equal Custody at Divorce?*, 65 La. L. Rev. 1345, 1358 (2005) (asserting that "as a matter of constitutional law, the best interests of the child, protected by the state, should prevail over the constitutional interests of either of the competing parents").

[¶34.]     We affirm.

[¶35.]     JENSEN, Chief Justice, and KERN, DEVANEY, and MYREN, Justices, concur.